### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| C.G., by his mother and next friend, WENDY GREEN,<br><br>    Plaintiff,<br><br>    v.<br><br>SEASHORE DAY CAMP & SCHOOL,<br>345 Second Avenue<br>Long Branch, New Jersey 07740<br><br>    <u>Serve On</u>:<br>    John Villapiano<br>    Seashore Day Camp & School<br>    345 Second Avenue<br>    Long Branch, N.J. 07740<br><br>    Defendant. | JURY TRIAL DEMANDED<br>Civil Action No.: |

### <u>COMPLAINT</u>

Plaintiff, C.G., through undersigned counsel, sues Seashore Day Camp & School for unlawful discrimination based on disability and states as follows:

### **PRELIMINARY STATEMENT**

1.      C.G. ("Plaintiff") is a five-year-old boy who was refused enrollment in Seashore Day Camp & School because of his food allergies in violation of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*., and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12.

1

2. Plaintiff seeks declaratory and injunctive relief, civil penalties, compensatory damages, punitive damages, and attorneys' fees and costs.

## THE PARTIES

3. Plaintiff, C.G., is a five-year-old kindergarten student who lives in Monmouth County, New Jersey with his parents and little sister.

4. Defendant, Seashore Day Camp & School ("Seashore"), is a New Jersey camp and year-round school that has operated on the Jersey shore for over ninety years. More than 40,000 campers have spent summers at Seashore which is headquartered at 345 Second Avenue in Long Branch, New Jersey with a second location at 404 Broadway in Long Branch, New Jersey. John Villapiano owns and operates Seashore.

5. Seashore is a place of public accommodation.

6. Upon information and belief, Seashore is a recipient of federal financial assistance.

## JURISDICTION

7. Jurisdiction over these claims is invoked pursuant to 28 U.S.C. § 1331, 1332, 1343, and 1367.

## FACTUAL ALLEGATIONS

8. Approximately 15 million Americans, including 5.9 million children, have food allergies. It is estimated that food allergies now affect two children in every classroom.

9. According to the Centers for Disease Control & Prevention, the prevalence of food allergies in children increased 50 percent between 1997 and 2011. Food allergies can significantly impact not only the life of the child diagnosed but the quality of life of their entire family.

10. C.G. is diagnosed with food allergies.

11. C.G. is an active and athletic five-year-old who likes to pick his mother flowers and always remembers to get an extra lollipop at the doctor for his little sister. C.G. loves sports and in the Spring of 2018 was proud to be graduating preschool and excited to be attending summer camp for the first time.

12. C.G. has a life-threatening allergy to dairy. When he ingests dairy he experiences anaphylactic reactions involving multiple body systems. Specifically, C.G. has experienced multiple anaphylactic reactions with broad ranging and severe symptoms including difficulty breathing, choking, coughing, vomiting, decrease in blood pressure, and hives. C.G. is also allergic to eggs, ham, beef, and lamb.

13. In the Spring of 2018, C.G. began getting excited about being old enough to graduate preschool and attend camp. He was especially excited about sports at Seashore.

14. C.G.'s mother, Wendy Green, researched local camps and concluded that Seashore would be a terrific place for C.G. to experience camp for the first time.

15. Green scheduled a camp visit for C.G. on May 19, 2018.

16. Camp owner and director, John Villapiano, met with C.G. and his mother on May 19, 2018, to give C.G. a tour of Seashore. After seeing C.G.'s enthusiasm for camp, Villapiano commented to C.G.'s mother that C.G. is "perfect for Seashore."

17. Green attempted to enroll C.G. at Seashore repeatedly.

18. A week after their camp visit with C.G. enthusiastic about attending Seashore, Green called Seashore and asked for Villapiano. Although she was promised a return call, Villapiano never returned the call.

19. Green called again on multiple occasions trying to enroll C.G. at Seashore but no one returned her calls.

20. Although Seashore transports children by bus daily, Green was flexible about transport and willing to drive C.G. herself if necessary.

21. On June 2, 2018, after receiving a general marketing email promoting Seashore, Green again tried to contact Villapiano. She emailed Villapiano seeking to enroll C.G. at Seashore. Attached as Exhibit 1.

22. Villapiano responded to Green indicating that he had decided that he would not permit C.G. to enroll at Seashore because of C.G.'s food allergies. Attached as Exhibit 2.

23. Green emailed Villapiano asking if there was anything she could do to change Villapiano's mind such that C.G. would be allowed to attend Seashore but Villapiano failed to respond at all to Green's pleas. Attached as Exhibit 2.

24. C.G. was not permitted to attend Seashore and instead had to return to his preschool for the summer. His friends were no longer at the school, having all graduated and moved on to other programs.

25. C.G. wants to attend Seashore next summer but is unable to do so as he will still be a child with food allergies and Seashore refuses to cease its discriminatory practices and allow his participation in its programs.

26. On October 5, 2018, C.G.'s family, through counsel, contacted Seashore via letter and informed Seashore that denying C.G. enrollment because of his disability is discrimination in violation of federal and state law. The letter requested that Seashore cease its discrimination against C.G. and respond by November 5, 2018.

27. On November 2, 2018, C.G.'s family, through counsel, contacted Seashore again via letter, and again informed Seashore that denying C.G. enrollment because of his disability is discrimination in violation of federal and state law. The letter again requested that Seashore cease its discrimination against C.G. and respond.

28. Defendant has not committed to come into compliance with federal and state laws against discrimination.

29. Upon information and belief, Defendant is a recipient of federal financial assistance.

## COUNT I
## AMERICANS WITH DISABILITIES ACT

30. Plaintiff, C.G., repeats and re-alleges the foregoing paragraphs in support of this claim.

31. Title III of the ADA prohibits discrimination based on disability by businesses and nonprofit organizations that serve the public. 42 U.S.C. 12182(a); s*ee also* 42 U.S.C. 12181(7) (defining "public accommodation").

32. Defendant is a place of public accommodation because it is, *inter alia*, a "place of education," a "place of public gathering," and a "place of recreation." 42 U.S.C. § 12181.

33. C.G. is an individual with a disability because he is substantially limited in the major life activities of eating and breathing and his food allergies substantially his major bodily functions and systems including but not limited to impact on his respiratory system, circulatory system, and integumentary system.

34. C.G. was qualified to attend Seashore because Seashore is open to the public and welcomes children his age to enroll in its summer camp.

35. Defendant excluded C.G. from its programs and activities and denied him the opportunity to participate in violation of 42 U.S.C. 12182(b)(1)(A)(i) ("It shall be discriminatory to subject an individual… on the basis of a disability or disabilities… to a denial of the opportunity of the individual… to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.").

36. Defendant must "make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the [entity] can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations." 28 C.F.R. 36.302(a); *see also* 42 U.S.C. 12182(b)(2)(A) (an entity must offer reasonable modifications, accommodations, and auxiliary aids and services).

37. Defendant violated the Title III of the ADA by excluding C.G. from Seashore on the basis of his disability.

38. C.G.'s family lives near Seashore and C.G. would like to attend Seashore's programs but remains unable to do so because of Defendant's discriminatory policies and practices.

**COUNT II SECTION 504 OF THE REHABILITATION ACT OF 1973**

39. Plaintiff, C.G., repeats and re-alleges the foregoing paragraphs in support of this claim.

40. C.G. is a qualified individual with a disability under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, because he is substantially limited in the major life activities

of breathing and eating, his food allergies significantly impact his major bodily functions, and he is eligible to attend Seashore.

41. Upon information and belief, Defendant is a recipient of federal financial assistance.

42. Defendant discriminated and continues to discriminate against C.G. solely on the basis of his disability by excluding him from the programs it offers to other non-disabled children. In so doing, Defendant denied C.G. meaningful access and an equal opportunity to participate in and benefit from Defendant's programs and activities in violation of Section 504 of the Rehabilitation Act.

43. Defendant's exclusion of C.G. was intentional.

44. C.G. was injured as the result of Defendant's conduct. In denying enrollment and participation to this five-year-old child on the basis of disability, Defendant subjected C.G. to humiliation, embarrassment, and isolation.

45. C.G. would like to attend Seashore like other children in his region but remains unable to access the programming due to Defendant's discriminatory policies and practices.

## COUNT III
## NEW JERSEY LAW AGAINST DISCRIMINATION
(New Jersey Statutes § 10:5-1 *et seq*.)

46. Plaintiff, C.G., repeats and re-alleges the foregoing paragraphs in support of this claim.

47. C.G. is a qualified individual with a disability within the meaning of the New Jersey Law Against Discrimination, N.J.S. § 10:5-5, because he has a condition which prevents the normal exercise of the bodily functions of eating and breathing and is old enough to enroll at Seashore.

48. Defendant discriminated against C.G. and continues to discriminate against him solely on the basis of his disability by excluding him from the programming it offers to other non-disabled children.

49. Defendant's exclusion of C.G. was intentional.

50. C.G. was injured as the result of Defendant's conduct. Defendant subjected C.G. to humiliation, embarrassment, and isolation on the basis of his disability.

51. C.G. would like to attend Seashore like other children in his region but remains unable to do so due to Defendant's discriminatory policies and practices.

**RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court provide the following relief:

a. Issue a declaratory judgment that Defendant's policies, procedures, and practices have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act of 1973, Title III of the Americans with Disabilities Act, and the New Jersey Law Against Discrimination;

b. Enjoin Defendant from any policy, procedure, or practice that will deny Plaintiff meaningful access to and an equal opportunity to participate in and benefit from Defendant's programs or that will exclude Plaintiff from its programs or services;

c. Order Defendant to promulgate and comply with policies and procedures to ensure that Defendant does not discriminate in the future against Plaintiff;

d. Order Defendant to train all its employees about its obligations pursuant to federal and state law and about Defendant's policy and procedures for allowing access for individuals with disabilities;

e. Assess a civil penalty against Defendant in an amount of at least $10,000.00 pursuant to N.J.S. § 10:5-14.1a.

f. Award compensatory damages pursuant to Section 504 of the Rehabilitation Act of 1973 and the New Jersey Law Against Discrimination;

g. Award punitive damages pursuant to the New Jersey Law Against Discrimination;

h. Award reasonable costs and attorneys' fees; and

i. Award any and all other relief that may be necessary and appropriate.

Date: December 21, 2018

Respectfully submitted,

s/Clara R. Smit
Law Office of Clara R. Smit
100 Horizon Center Boulevard
Hamilton, N.J. 08691
(732)843-6600 telephone
(877)617-3494 facsimile
crsmitlaw@aol.com

s/Mary C. Vargas*
Mary Vargas*
Michael S. Stein*
Martie Lafferty*
STEIN & VARGAS, LLP
10 G Street NE, Suite 600
Washington, DC 20002
Tel: (202) 248-5092
Fax: (888) 778-4620
Michael.Stein@steinvargas.com
Mary.vargas@steinvargas.com
Martie.Lafferty@steinvargas.com

*Motions to participate *pro hac vice* to be submitted after case is opened.

## JURY DEMAND

Plaintiff hereby demands that this action be tried before a jury.

s/Clara R. Smit
Clara R. Smit
